Johnson, J.
The judgment of reversal entered by the court of appeals was predicated on the ground that under the provisions of Section 13608, General Code, it was the duty of the court of common pleas, on the filing of the suggestion of counsel for the defendant that he “is not now sane,” with the accompanying affidavit and certificate to the same effect, to order a jury to be impaneled to try whether or not the accused is insane “at the time of such impaneling.” Pertinent parts of Section 13608 are as follows: “When the attorney of a person indicted for an offense suggests to the *481 court in which such indictment is pending, and before sentence, that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, such court shall order a jury to be impaneled to try whether or not the accused is sane at the time of such impaneling.” Subsequent provisions of the same and following sections provide for the procedure.
In State v. Roselot, 69 Ohio St, 91, it was held that the provisions of Section 13608, General Code, which was then Section 7240, Revised Statutes, are mandatory, and that the mode therein prescribed for a trial of the present sanity of a person under indictment, is peremptory and exclusive. The second proposition of the syllabus is: “When, therefore, at any time before sentence, the insanity of a defendant under indictment is suggested and brought to the attention of the court in which such indictment is pending in the manner provided in said Section 7240, it is the imperative duty of the court to order a jury to be impaneled to try such question, and such jury when so impaneled, shall be specially sworn to try the question whether the defendant is or is not then sane.”
It will be observed that the sole question to be determined in the proceeding provided for in the section referred to is the sanity of the defendant at the time of inquiry. The jury is specially sworn to try that question. The investigation is not concerned with the indictment, or the guilt or innocence of the defendant of the crime charged; and *482 has nothing to do with the sanity of the defendant at the time of the commission of the alleged crime, except as it might throw light on the sanity of the defendant at the time of the impaneling of the special jury. It is manifest that the statute was passed in obedience to an enlightened sentiment that proceedings under indictment of one accused of crime should not be carried on while he is insane.
Counsel for the state concede that the judgment of the court of appeals would have been correct if rendered, at the time of the decision of State v. Roselot, but they contend that Section 13608, General Code, has been repealed by implication by the Lima State Llospital Act, 98 Ohio Laws, page 236, which was passed April 2, 1906. It is contended that this act contains complete and comprehensive provisions for the care of the criminal insane, and that its provisions touching the subject covered in Section 7240, Revised Statutes, now Section 13608, General Code, are inconsistent therewith; that as the Lima State Hospital Act was passed subsequent to Section 7240, Revised Statutes, the latter is repealed by implication. The Lima State Hospital Act is entitled “An act to provide for the erection, organization and management of the Lima State Hospital for Insane.” It provides for the appointment of officers to control the hospital and for their duties; and the act contains general provisions with reference to the management of the hospital and for the receipt, custody and care of inmates. The second section provides that it shall be used for the custody, care and special treatment of insane persons of seven different classes, among them persons *483 adjudged to be insane who have previously been convicted of crime.
The rule is familiar, and everywhere recognized, that a subsequent statute revising the whole subject-matter of the former act, and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former. But it is equally well settled that repeals by implication are not favored, and, where two affirmative statutes exist, one is not to be construed to repeal the other by implication unless they can be reconciled by no mode of interpretation. The fact that a later act is different from a former one is not sufficient to effect a repeal. It must further appear that the later act is contrary to or inconsistent with the former. The question is one of legislative intent. It must clearly appear that the legislature intended not only to enact a new law but to enact it in place of the old one.
As already pointed out the purpose of the Lima State Hospital Act was to provide for the erection and management of the hospital.
Section 2 of the hospital act having provided that the hospital shall be used for the custody, care and special treatment of insane persons of certain specified classes, subsequent sections of the act provide machinery for dealing with each class. Section 12 enacts that when a grand jury on investigation of a person accused of crime finds such person to be insane, it shall proceed as provided in Sections 7240 and 7241, Revised Statutes. Section 13 provides that if any person under indictment appears to be insane, proceedings shall be had as provided for *484 persons not indicted because of insanity. In case such person is found to be insane he shall be committed to the Lima State Hospital until restored to reason, when the superintendent thereof shall proceed as provided in Section 7243 of the Revised Statutes.
It must be noted that by the provisions of Section 12 of the hospital act, above referred to, the existence of Section 7240, Revised Statutes, which is now Section 13608, General Code (being the section which the state contends is repealed by implication), is specifically ratified, and its provisions invoked.
This of itself would seem to be sufficient to demonstrate that the legislature not only did not intend to repeal the section referred to, but that it desired to embrace the provisions of that section within the terms of the hospital act itself.
The provisions of the Lima State Hospital Act and of Section 7240 et seq., Revised Statutes, were subsequently carried into the General Code, which was adopted by the legislature in 1910.
Section 12 of the Lima State Hospital Act above referred to is now Section 13577, General Code, and prescribes the procedure where a grand jury finds that a person who has been accused of crime is insane. It directs that the court shall order a jury to be impaneled to try whether or not the accused is sane, “and such court and jury shall proceed in a like manner as provided by law when the question of the sanity of a person indicted for an offense is raised at any time before sentence,”
*485 When the legislature passed the statute which adopted the General Code it re-enacted the provisions of Section 7240 etseq., Revised Statutes, under the numbers above given, and re-enacted the provisions of the Lima State Hospital Act. Therefore, all of these statutory provisions stand equal, so far as the legislative authority is concerned. There is no priority as to time. Neither can be said to be in legal effect subsequent to the other, or to have received the later sanction of the legislature.
The action of the codifying commission in the revision and consolidation of the statute laws of the state was in obedience to the requirements of the statute which created the commission.
In referring to the general subject, Judge Spear in State v. Toney, 81 Ohio St., 130, says at page 139: “Their codification was submitted to, considered by, and adopted by the law making body of the state, the general assembly. It should not receive any less respect because the change may have been recommended by three commissioners learned in the law instead of being proposed in the first instance by some single member of the general assembly, and after all is said, the enactment receives its vigor and force as law by reason of its enactment by the general assembly, no matter from what source the inspiration came.”
As we view it, therefore, there is in this case no question of repeal by implication, because the element which must be present before repeal by implication can arise, namely, the subsequent enactment of the statute under which the repeal by implication arises, is not present here. Of course all of *486 the provisions, as now found in the General Code, must be construed together and harmonized where that is possible, and the intention of the legislature be given effect. And as an aid in arriving at the legislative intent the original statutes may well be examined and considered.
Section 2003, which was Section 15 of the hospital act, provides that in case any judge of a probate court in holding an inquest of lunacy finds a person to be insane, who was formerly convicted of arson, assault, rape, robbery, burglary, homicide, or attempt to commit such acts, he shall commit such person to the Lima State Hospital. And the following is a part of Section 13610, General Code: “If the jury find him to be not sane, that fact shall be certified by the clerk to the probate court, and the accused, until restored to reason, shall be dealt with by such court as upon inquest had. If he is discharged, the bond given' for his support and safe-keeping shall contain a condition,” etc.
Construing these two sections together the implied suggestion that a bond might be given, which is found in Section 13610, General Code, must yield to the express requirement found in Section 2003, General Code, above quoted.
We think it clear the judgment and order of the court of appeals is correct, and it is therefore affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Wanamaicer and Robinson, JJ., concur.
Hough, J., not participating.